IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN BALDERAS, | § | |
|     *Petitioner*, | § | |
| | § | |
| v. | § | |
| | § | CIV. NO. 4:20-cv-04262 |
| BOBBY LUMPKIN, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
|     *Respondent*. | § | |

### RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION FOR AN EXTENSION OF TIME TO FILE AN AMENDED HABEAS CORPUS PETITION

This is a federal habeas case, and Petitioner Juan Balderas is a Texas state inmate under a sentence of death. Despite filing his initial petition over one year ago, Balderas claims that, due to delays related to the COVID-19 pandemic, he needs another three-month extension, on top of his two prior three-month extensions, to file his amended petition so that his counsel can continue to discuss issues and potentially schedule further testing. *See generally* Mot. The Director opposes this request.

### PROCEDURAL HISTORY

Balderas filed his initial petition on December 15, 2020. ECF No. 2. On January 21, 2021, the Court entered a scheduling order giving Balderas 180 days to file his amended petition, placing his deadline on July 20, 2021. ECF

No. 10. The Director has agreed to two 90-day extensions, both of which the Court granted through an amended scheduling order. ECF Nos. 26, 27, 31, 32. Balderas's amended petition is therefore currently due on January 17, 2022. ECF No. 32. The current scheduling order instructs Balderas to inform the Director *before* December 17, 2021, if he has been impeded from meeting his deadline by "exigent circumstances." ECF No. 32.

On December 17, 2021,—one day *after* Balderas was to inform the Director about any exigent impediments to filing an amended petition— counsel for Balderas conferenced the undersigned, claiming for the third time that COVID had impeded his ability to file his amended petition by the deadline. Pet'r Ex. 1 (December 17, 2021 Email from Marc Silverman). One business day later, the undersigned informed Balderas's counsel that the Director opposed Balderas's request for more time based on the information provided. *Id*. (December 20, 2021 Email from Ali Nasser). Ten days later, counsel for Balderas gave more information to the undersigned, and the undersigned advised that the Director remained opposed to Balderas's request. *Id*. (December 30, 2021 Email from Marc Silverman), (December 31, 2021 Email from Ali Nasser).

On January 3, 2022, Balderas filed his opposed motion for an extension of time to file his amended petition and requested an emergency hearing on

the motion. ECF No. 33. Upon the Director's request, the Court gave the Director until January 10, 2022, to file his opposition to the motion. It follows.

## ARGUMENT

Balderas requests a third COVID-based extension of time to file an amended petition. He first points out that his expert, Dr. Bhushan Agharkar, did not complete his screening evaluation of Balderas until August 19, 2021, and therefore did not recommend neuropsychological testing until that date. Mot. at 2–3. Balderas also claims that, after retaining a neuropsychologist, Dr. Robert Ouaou, on August 25, 2021, he was also not able to visit with Dr. Ouaou, until October 15, 2021, due to COVID-related delays. *Id.* at 3. Finally, he claims that, despite Dr. Agharkar and Dr. Ouaou both finishing their expert reports by late November, COVID-related delays prevented him from conferring with counsel until December 17, 2021. *Id.*

But upon a closer look, it seems Balderas has been impeded by his own lack of diligence, not any COVID-related delay, and he should not benefit from his dilatoriness. *Cf. Jones v. Lumpkin*, No. 19-10079, 2022 WL 43169, at *4 (5th Cir. Jan. 5, 2022) (affirming denial of equitable tolling because periods of delay were "entirely self-inflicted"). First, Balderas fails to explain why COVID-related delays prevented Dr. Agharkar from completing his screening evaluation until August 19, 2021; second, he fails to explain why, despite alleging in his December 2020 petition that he might have neurological deficits,

3

he did not request visitation from a neuropsychological expert until September 2021; and third, given that he received his experts' reports by November 2021 and conferred with his counsel on December 17, 2021, Balderas fails to explain why he could not file his amended petition by January 17, 2022. Finally, granting Balderas's request will prejudice the Director's interest in the finality of its state-court judgment.

First, Balderas does not explain how COVID delayed Dr. Agharkar from finishing his screening evaluation and recommending neuropsychological testing as late as August 19, 2021. As Balderas conceded in his first conference with the Director, TDCJ lifted restrictions on inmate visitation on March 15, 2021.[1] Pet'r Ex. 1 (June 18, 2021 Email from Jonathan Berke) (representing that Balderas had been impeded by TDCJ's restrictions on visitation, which "were only lifted on March 15th, 2021").

Consistent with that representation, Balderas's visitation records show that TDCJ approved Dr. Agharkar to visit Balderas twice in May 2021. Ex. A at 19–23.[2] And it took until July 8, 2021, roughly six weeks after Dr. Agharkar

---

[1] This date can also be found on TDCJ's website: https://www.tdcj.texas.gov/covid-19/faq.html

[2] While the May 27, 2021 visitation has a start time and end time, the May 25, 2021 visitation is marked as "no show." Ex. A at 19, 22.

4

last saw Balderas, before TDCJ received a request for a July 29, 2021 follow-up visit from Dr. Agharkar. *Id.* at 13–14. Balderas has not given any explanation of how COVID-related delays impeded scheduling Dr. Agharkar's May 2021 visitations, how they necessitated scheduling the July follow-up evaluation, or how they impeded scheduling the July follow-up evaluation.[3] And it is dubious he could provide a satisfactory reason since he has retained Dr. Agharkar since at least December 2020, and Dr. Agharkar should have had plenty of familiarity with Balderas's case and should have been available to evaluate him right when TDCJ started allowing expert visits again. *See generally* ECF No. 2 (petition); ECF No. 2-1 (Declaration of Dr. Bhushan Agharkar).

Second, Balderas fails to show that COVID is the reason Dr. Ouaou finished his neuropsychological evaluation as late as November 2021. In his December 2020 petition, Balderas relied on Dr. Agharkar to allege that trial counsel were ineffective for failing to discover potential neurological defects. ECF No. 2 at 224–25 (petition); ECF No. 2-1 at 4–6, 8 (Declaration of Dr. Bhushan Agharkar). So Balderas could have scheduled a visit from Dr. Ouaou

---

[3] While Balderas represented to the Director that Dr. Agharkar could not finish his screening evaluation of Balderas until July 29, 2021, due to COVID-related delays, he provided no information supporting the conclusory assertion. Pet'r Ex. 1 (September 17, 2021 Email from Marc Silverman).

5

well before September 2021 to develop evidence of the neurological deficits that he alleged in his 2020 petition. Moreover, even if waiting until August 25, 2021, to hire Dr. Ouaou were justifiable, though there is little reason to believe this to be the case, Balderas provides no explanation of how COVID-related scheduling issues prevented Dr. Ouaou from visiting him until October 15, 2021.[4]

Third, even assuming COVID is responsible for all delays in this case, including Balderas's complaint that he could not talk to his counsel on the phone until December 17, 2021, that still provided him with plenty of time to file his amended petition by January 17, 2022. Balderas's amended petition should relate back to the facts alleged in his petition, and therefore his expert reports should merely supplement the allegations already alleged in the petition. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005). Balderas never says that he cannot incorporate his expert findings into his amended petition in one month.[5]

---

[4] While Balderas complains that, due to COVID-related scheduling issues, Dr. Ouaou could not evaluate him until October 15, 2021, Balderas's visitation records show that he first faxed a September 23, 2021 visitation request on September 16, 2021, and that Dr. Ouaou visited Balderas on September 23, 2021, for nearly six hours. Ex. A at 5–6. If Dr. Ouaou did in fact evaluate Balderas on September 23, 2021, then nearly a month of delay would be attributable to Dr. Ouaou, not TDCJ.

[5] Given this timing, it is hard to believe that *exigent* circumstances justify this request. The pandemic has been around since March 2020, vaccines have been widely available since March 2021, coinciding with TDCJ's reopening visits, and Balderas has had ten months' time to complete his work since that point.

Instead, Balderas disputes that he should even have to file an amended petition without further deliberation, further investigation into new unpled issues,[6] and—maybe—further testing. Mot. at 3–4. To sum up, after (1) filing an initial petition containing his factual allegations, (2) having 12 months to develop facts supporting those allegations, (3) having three expert visitations over those 12 months, and (4) receiving his experts' conclusions almost two months before his deadline, Balderas claims he is *still not ready to file an amended petition*—not because COVID prevents him from doing so, but because he wants to kick the tires on some new potential issues. Such an open-ended request is not supported by an exigent circumstance related to COVID. It is only supported by Balderas's obstinance against filing his amended petition.

Finally, Balderas gets the prejudice analysis backwards. Contrary to his claims of prejudice, he has been given over one year to file his *amended*

---

[6] Balderas mentions that he would now like to investigate competency-to-stand-trial issues. Mot. at 4. While he pleaded a competency-to-be-executed claim in his petition, Balderas never raised a claim relating to his competency at the time of trial. *See generally* ECF No. 2 (petition). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both and type from those original pleadings set forth." *Mayle*, 545 U.S. at 650. Thus, a competency-to-stand-trial claim would not relate back to any claim in Balderas's petition and would be time-barred under AEDPA. *See* 28 U.S.C. § 2244(d)(1). It should be obvious that neither Balderas, nor any petitioner, should be given additional time to file time-barred claims.

petition, longer than many capital petitioners. Conversely, granting his request would prejudice the Director. "AEDPA's 1-year limitations period 'quite plainly served the well-recognized interest in the finality of state court judgments.'" *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (quoting *Duncan v. Walker*, 533 U.S. 167, 179 (2001)); *see also* 28 U.S.C. § 2244(d)(1). And granting more than a year to file an *amended* petition is therefore also contrary to Congress's intent "to eliminate delays in the federal habeas review process[,]" *Holland v. Florida*, 560 U.S. 631, 648 (2010), and not in the "interest of justice." *Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice."). So, by thwarting the public's desire for speedy habeas resolution, permitting Balderas to file an amended petition 16 months after the one-year-limitation has expired will harm the Director. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[H]arm to the opposing party and public interest [] merge when the Government is the opposing party.").

Despite this harm, the Director has also been considerate of Balderas's interests, specifically of how COVID might have impeded Balderas's investigation. He agreed to give Balderas 180 days to file his amended petition. He then agreed to a 90-day extension. And then he agreed to *another* 90-day extension. But giving Balderas a third 90-day extension when he is perfectly capable of filing his amended petition turns the Director's goodwill into the very delay AEDPA protects against. In other words, it prejudices the Director.

8

## CONCLUSION

For these reasons, the Director respectfully requests that the Court deny Balderas's motion for an extension of time to file his amended petition.

                KEN PAXTON
                Attorney General of Texas

                BRENT WEBSTER
                First Assistant Attorney General

                JOSH RENO
                Deputy Attorney General
                For Criminal Justice

                EDWARD L. MARSHALL
                Chief, Criminal Appeals Division

                s/ Ali M. Nasser
                ALI M. NASSER
                Assistant Attorney General
                *Counsel of Record*
                State Bar No. 24098169
                Southern District Admission No. 2936065

                Post Office Box 12548, Capitol Station
                Austin, Texas 78711
                Tel: (512) 936-2134
                Ali.Nasser@oag.texas.gov

                *Counsel for Respondent*

# CERTIFICATE OF SERVICE

      I do hereby certify that on January 10, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Ashley Carr
DLA Piper LLP
401 Congress Avenue
Suite 2500
Austin, TX 78701
512-457-7251
Ashley.carr@dlapiper.com

                                  s/ Ali M. Nasser
                                  ALI M. NASSER
                                  Assistant Attorney General